UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| WORKDAY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:17-cv-299 |
| | ) | |
| MOHAMMAD KHAN, JABER | ) | |
| HUSSAIN, SANJAY KUMAR, AZIZ | ) | |
| MOHAMMAD, J.B. SOFTWARE AND | ) | |
| CONSULTING, INC. and WORKDAY | ) | |
| INTEGRATIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The Plaintiff, Workday, Inc. ("Workday"), for its Complaint against the Defendants, Mohammad Khan ("Khan"), Jaber Hussain a/k/a/ Aziz Hussain ("Hussain"), Sanjay Kumar ("Kumar"), Aziz Mohammad a/k/a Aziz Md (Mohammad"), J.B. Software and Consulting, Inc. ("J.B. Software"), and Workday Integrations a/k/a WorkdayIntegrations.com ("Workday Integrations") (collectively, "Defendants") herein alleges:

## JURISDICTION AND VENUE

1.     This action arises under the trademark and unfair competition laws of the United States, the Anticybersquatting Consumer Protection Act, and Texas State law.

2.     This action is brought pursuant to 15 U.S.C. § 1114, § 1125(a), and § 1125(d), and Texas state law concerning unfair competition.

3.     This Court has jurisdiction over the subject matter of this case pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.     This Court has personal jurisdiction over the Defendants because the Defendants are, and have been, conducting continuous and systematic business by promoting and selling services within the State of Texas and within the boundaries of the Eastern District of Texas. Defendants have also caused harm and committed unlawful acts hereinafter complained of in this judicial district, and Workday has suffered harm in this judicial district as a result of Defendants' conduct.

5.     Venue is appropriate in this district in accordance with 28 U.S.C. § 1391(b) and (c).

## PARTIES

6.     Workday is a Delaware corporation organized under the laws of the State of Delaware, having an office and principal place of business at 6230 Stoneridge Mall Road, Pleasanton, California, 94588.

7.     Khan is a citizen of the State of Texas residing at 5308 Saint Croix Court, Richardson, Texas 75082

8.     Hussain is a citizen of the State of Texas residing at 807 Soapberry Drive, Allen, Texas 75002.

9.     Aziz is a citizen of the State of Texas residing in this judicial district.

10.    Muhammed is a citizen of the State of Texas residing in this judicial district.

11.    J.B. Software is a corporation organized under the laws of the State of Texas, having a principal place of business of 807 Soapberry Drive, Allen, Texas.

12.    Workday Integrations is not formally incorporated.  Defendants have identified it as a subsidiary of J.B. Software.

13.     One or more of the individual defendants has operated under the name Jason Aman in some of his dealings at issue in the pending dispute.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Business of Workday

14.     Workday is a preeminent provider of cloud-based software-as-a-service ("SaaS") solutions used in enterprise, government and educational resource planning, human capital and financial management, recruiting, analytics and learning management.  In addition, Workday, along with Workday's authorized partner program participants, assists customers in implementing its SaaS solutions, and offers integrations and integration support services for use with Workday's services.

15.     Workday has offered its SaaS solutions and other services under the WORKDAY® mark in interstate commerce and to distinguish its goods and services since as early as November 2005.

16.     Workday is one of the largest providers of SaaS solutions identified above in the world.  More than 1,000 organizations, ranging from medium-sized businesses to Fortune 50 enterprises, have selected Workday's solutions.  Those organizations have hundreds of thousands of users of the WORKDAY® solutions. The services offered and sold by Workday are well-known and highly desirable to consumers.

17.     In addition, Workday, along with a limited number of authorized WORKDAY® Services Partners and WORKDAY® Software Partners (jointly, "WORKDAY® Partners"), provides pre-built integrations and deployment, integration and other consulting services to its customers.

18.     These services are a vital part of Workday's overall product and service offerings. If a WORKDAY® service is not integrated into a customer's overall computer system properly, the service and systems will not function together properly, reflecting poorly on Workday.  This is the reason that Workday established its WORKDAY® Partners program and exercises strict control over the use of its marks in connection with the services provided by these Partners.

19.     Workday requires its WORKDAY® Partners to have their individual consultants that would provide services to Workday customers to successfully complete extensive training and testing before they are authorized to represent themselves to be a certified WORKDAY® Partner.  WORKDAY® Software Partners must obtain Workday's approval before offering pre-built integrations to the WORKDAY® service and the individuals that will support such integrations must also complete extensive training. Further, the WORKDAY® Partners are subject to stringent written confidentiality, security and data privacy obligations.  In addition, Workday charges WORKDAY® Partners yearly fees for the right to represent themselves as WORKDAY® Partners and to use the WORKDAY® trademark.  Their use of that mark is governed by contract and a published Workday policy.

20.     Upon successful completion of the applicable training program, the individual consultants employed by a WORKDAY® Consulting Partner may represent themselves to be WORKDAY® certified professionals only for the Workday product area for which they have a current training certification and only for so long as they are employed by a WORKDAY® Consulting Partner.  Their use of the WORKDAY® mark is governed by a published Workday policy which, among other things, prohibits those individuals from representing themselves to be WORKDAY® certified professionals unless they are employed by a WORKDAY® Consulting Partner.

21.     WORKDAY® Partners may not use the WORKDAY® mark or identify themselves as a WORKDAY® Partner if they are no longer authorized by Workday to do so. WORKDAY® certified professionals are not allowed to identify themselves as a WORKDAY® certified professional unless they perform services for a WORKDAY® Partner's WORKDAY® consulting practice and have met all ongoing requirements to continue to represent themselves as a WORKDAY® certified professional.

22.     Workday spends millions of dollars each year advertising its software solutions and services through a variety of means, including print, digital, and television.  In addition, it has developed a strong internet presence, through its websites in ten countries and in six languages, all accessible via Workday's U.S. website located at www.workday.com, and through various digital channels.

23.     Workday hosts several conferences each year for its existing and prospective customers, WORKDAY® Partners and WORKDAY® certified professionals.   These conferences, all of which are promoted under the WORKDAY® mark, are heavily promoted and widely attended by customers, prospective customers, and certified professionals from around the world.  Many thousands of people attended Workday conferences in 2016 alone.

24.     Workday has obtained several registrations for its WORKDAY® mark in the United States and abroad, including U.S. Reg. No. 3,280,638 for the mark WORKDAY®, U.S. Reg. No. 5,131,360 for the mark WORKDAY®, U.S. Reg. No. 3,326,815 for WORKDAY® Design mark, U.S. Reg. No. 5,048,288 for the WORKDAY® Color Design mark, and U.S. Reg. No. 5,067,271 for the WORKDAY RISING® mark. The WORKDAY® Color Design mark appears as follows:



The WORKDAY® Color Design mark is registered for use in connection with, among other things:

> [C]loud application service provider, namely, hosting, managing, developing, programming, and maintaining custom software applications for others in the fields of business, government and educational resource planning, human capital and financial management, recruiting and analytics; research and development and consultation related thereto in the field of cloud software applications . . .

Documents providing the registration details for these marks are attached as Exhibit A to this Complaint.

25.     Section 8 and 15 Declarations have been filed and approved for U.S. Reg. Nos. 3,280,638 and 3,326,815.  As a result, these marks have become incontestable and are entitled to the presumptions afforded to incontestable marks under 15 U.S.C. § 1065.

26.     In addition, Workday has obtained registrations for the WORKDAY® and WORKDAY® and Design marks in nine different countries and the European Union in addition to the United States.  A table listing these registrations is attached as Exhibit B to this Complaint.

27.     Workday considers its intellectual property amongst its most valuable assets and acts to protect it accordingly.

28.     The pending applications and registrations in paragraphs 19 and 21, and the additional common law rights arising from the uses described in paragraph 10-18 will be collectively referred to as the "Workday Trademarks."

29.     As a result of the significant sales, promotion, and use of the Workday Trademarks, Workday's trademarks have become widely recognized by the general consuming public of the United States as a designation of source of the goods and services of Workday. Workday has expended and continues to expend resources promoting and advertising the WORKDAY® brand and the goods and services provided thereunder.  As a result of such promotion and advertising, coupled with the reputation of the high quality and popularity of Workday's goods and services, the Workday Trademarks have attained goodwill among consumers nationally and around the world.  The Workday Trademarks and the goodwill of the business associated therewith are of inestimable value to Workday.

30.     Workday has also spent significant time and resources preventing the unauthorized use of the Workday Trademarks by third parties.  Workday actively monitors the U.S. Federal Trademark Registry and diligently acts to protect the Workday Trademarks.

31.     Workday has policies that governs the use of the Workday Trademarks by others, including the use and registration of the Workday Trademarks in domain names.

**Defendants' Business and Infringement**

32.     On or before April 2015, Workday Integrations began offering services relating to WORKDAY® SaaS solutions under the WORKDAY® mark and confusingly similar marks, including  WORKDAYINTEGRATIONS.COM  and  WORKDAY  INTEGRATIONS  (the "Infringing Services").

33.     Among other uses, Defendants have adopted and used the following logo, used on the website workdayintegrations.com:



34.     This logo appropriates the same typeface as the typeface protected by Workday trademark registrations Reg. Nos. 3,326,815 and 5048288, and uses A shade of blue confusingly similar to the shade of blue that is a protected element in Workday Reg. No. 5,048,288.

35.     Workday Integrations represents itself to be a "Workday specialists company," "[f]ocused exclusively on Workday Integrations," and to have a "[n]etwork of Workday certified consultants."

36.     Workday Integrations has offered these services through a website (the "Infringing Website") located at www.workdayintegrations.com (the "Infringing Domain Name"), and has used that Infringing Domain Name to direct consumers and prospective software engineers to the Infringing Website for its own commercial benefit.

37.     The Infringing Domain Name was registered in April 2015.  The registration information for the Infringing Domain Name is publicly blocked by a private registration company, but Defendants have confirmed that they are the owner of the domain.

38.     The Infringing Website has included numerous unauthorized uses of the Workday Trademarks, as well as the confusingly similar marks WORKDAYINTEGRATIONS.COM and WORKDAY INTEGRATIONS.   Until at least September 2016, the website included unauthorized copies of several copyrighted Workday materials.  These materials were removed from the website only after Workday Integrations received a cease and desist letter from counsel for Workday dated August 23, 2016.  Since early January 2017, Defendants have redirected those entering the www.workdayintegrations.com domain name to, among other sites, www.workday.com, the website controlled by Workday.  This compounds the confusion between the parties by making it appear that Defendants are affiliated with Workday.

39.     In addition to its website, Defendants have established LinkedIn affinity groups titled "Workday Jobs" and "Workday Certified Consultants."   The information relating to these groups contains no disclaimer that the groups are not sponsored or otherwise authorized by Workday.

40.     Upon information and belief, Defendants use these social media sites and affinity groups to attract prospective software engineers and customers to Workday Integrations.

41.     None of Defendants' actions were authorized or licensed by Workday.

42.     Workday learned of Defendants' infringing conduct in August 2016.  In a cease and desist letter dated August 23, 2016, Workday demanded that Defendants cease use of the Workday Trademarks and any other marks including the word "workday," change their business name to a name that did not include the WORKDAY® mark, and assign to Workday the Infringing Domain Name and any other domain names they owned or controlled and that included the mark WORKDAY®.

43.     Defendants made some modifications to the Infringing Website after receipt of the cease and desist letter.   However, until January 2017, that website continued to include numerous unauthorized uses of the Workday Trademarks and confusingly similar trademarks, as well as deceptive and misleading statements causing confusion and deception of those examining the Infringing Website.   Defendants continue to host the infringing LinkedIn affinity groups "Workday Jobs" and "Workday Certified Consultants."

44.     Despite repeated demands to cease and desist all infringing activities, Defendants have refused to do so.

45.     On October 4, 2016, almost six weeks after receiving Workday's cease and desist letter, Defendants filed an application with the United States Patent and Trademark Office, Serial

No. 87/192,991 (the "Infringing Trademark Application"), seeking to register the mark

WORKDAYINTEGRATIONS.COM for use in connection with:

> IT consulting services; Computer software development and computer programming development for others; Creating, maintaining, testing and modernizing computer software; Technical support services, namely, remote and on-site infrastructure management services for monitoring, administration and management of public and private computing IT and application systems.

46.     In an apparent effort to evade detection, Defendants filed the Infringing

Trademark Application in the name of "M&H Consulting," a Michigan corporation that is not in

good standing with the Michigan Secretary of State.

47.     On March 14, 2017, pursuant to a demand by Workday, Defendants abandoned

the Infringing Trademark Application.

48.     Defendants continue to market, promote, provide, and sell the Infringing Services

through the same channels of trade and to the same customers as Workday and the

WORKDAY® Partners, using the Workday Trademarks.  As a result, consumers are likely to be

confused as to the source of Defendants' Infringing Services, the affiliation between Defendants

and Workday, or the sponsorship of Defendants' services by Workday due to the use of the

Workday Trademarks and infringing marks including the word "workday."

49.     The Infringing Services are identical in many respects, and highly related in other

respects, to Workday's services and those of the WORKDAY® Partners.

50.     Defendants' use of the Workday Trademarks and infringing marks including the

word "workday" in connection with the Infringing Services falsely creates the impression that

the Infringing Services are sponsored by or affiliated with Workday and constitutes trademark

infringement and unfair competition.

51.     The Infringing Services are not Workday's services, and Defendants do not have the sponsorship, consent, approval, or certification of Workday to use the Workday Trademarks or any trademark including the word "workday" in connection with the Infringing Services.

52.     Defendants' unfair competition and infringement demonstrate intentional, willful, and bad faith attempts to deceive or to create mistake or confusion in the minds of Workday's customers and potential customers and of the public, to trade on Workday's goodwill, to palm off Defendants' services as those of Workday, and to create the false impression of a connection, affiliation, association between Workday and Defendants, or of sponsorship or approval of Workday, all causing irreparable injury to Workday.

53.     Workday has no adequate remedy at law.

54.     By reason of Defendants' activities, Workday has suffered actual damages for injury to its goodwill and reputation, and injury to its relationships with customers and potential customers.

55.     Because of Defendants' bad faith and intentional and willful infringement, unfair competition, and deceptive trade practices, Workday is entitled to recover punitive damages to deter Defendants from repeating their unlawful activities, as well as Workday's attorneys' fees and the costs of this action.

## COUNT I
## INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS
## (15 U.S.C. § 1114)

56.     Workday realleges and incorporates by reference the allegations of paragraphs 1 through 55 as if fully set forth in this paragraph.

57.     Defendants' promotion, advertising, provision, sale, and offering for sale of the Infringing Services under the Workday Trademarks and marks including the word "workday" is

likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of said products and services, and is intended and is likely to cause such parties to believe in error that the Defendants' Infringing Services have been authorized, sponsored, approved, endorsed, or licensed by Workday, or that Defendants are in some way affiliated with Workday.

58.     Defendants' activities, as described herein, constitute infringement of Workday's Workday Trademarks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114.

59.     Defendants' use of the Workday Trademarks and marks including the word "workday" with the Infringing Services has been and continues to be willful, deliberate, unfair, false, deceptive, and intended to trade upon the goodwill and reputation appurtenant to the Workday Trademarks.

60.     Defendants' acts have damaged and will continue to damage Workday, and Workday has no adequate remedy at law.

61.     Workday is entitled to injunctive relief prohibiting Defendants from using the Workday Trademarks, or any marks confusingly similar thereto, in accordance with 15 U.S.C. § 1116, and to recover all damages, including attorneys' fees, that Workday has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, as well as the costs of this action, pursuant to 15 U.S.C. § 1117(a).

## COUNT II
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C.  § 1125(A))

62.     Workday realleges and incorporates by reference the allegations of paragraphs 1 through 55 as if fully set forth in this paragraph.

63.     Defendants' conduct complained of herein constitutes federal unfair competition, false designation of origin, and false advertising pursuant to 15 U.S.C. § 1125(a).

64.     Defendants' intentional, unlawful, and unauthorized use in commerce of the Workday Trademarks and marks including the word "workday," and Defendants' false advertising in commerce as described herein, is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of Defendants' services and therefore constitutes false designation of origin and false advertising, in violation of 15 U.S.C. § 1125(a).  Defendants' acts have damaged and will continue to damage Workday, and Workday has no adequate remedy at law.

65.     Workday is entitled to injunctive relief prohibiting Defendants from using the Workday Trademarks, or any marks confusingly similar thereto, in accordance with 15 U.S.C. § 1116, and to recover all damages, including attorneys' fees, that Workday has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of the infringing acts alleged above in an amount not yet known, as well as the costs of this action, pursuant to 15 U.S.C. § 1117(a).

## COUNT III
## ANTICYBERSQUATTING CONSUMER PROTECTION ACT
### (15 U.S.C.  § 1125(D))

66.     Workday realleges and incorporates by reference the allegations of paragraphs 1 through 55 as if fully set forth in this paragraph.

67.     Upon information and belief, Defendants have and continue to have a bad faith intent to profit from the registration and continued use of the Infringing Domain Name by creating an association with Workday's distinctive Workday Trademarks.

68.     Defendants have registered, trafficked in, and used the Infringing Domain Name, which incorporate the identical Workday Trademarks.

69.     The Workday Trademarks were distinctive at the time of Defendants' registration and the Infringing Domain Name wholly contains the Workday Trademarks.

70.     The Infringing Domain Name is confusingly similar to the Workday Trademarks.

71.     Workday has been damaged by Defendants' unlawful use and registration of the Infringing Domain Name and will suffer irreparable harm.

72.     Defendants' acts, as aforesaid, are in violation of the Anticybersquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

73.     As a result of Defendants' actions, Workday is entitled to immediate transfer of any domain names incorporating the Workday Trademarks, including the Infringing Domain Name, in accordance with 15 U.S.C. § 1125(D)(1)(c); and an award of statutory damages of between $1,000 and $100,000 per each of the Infringing Domain Names pursuant to 15 U.S.C. § 1117(d).

## COUNT IV
## UNFAIR COMPETITION
## (TEXAS COMMON LAW)

74.     Workday realleges and incorporates by reference the allegations of paragraphs 1 through 55 as if fully set forth in this paragraph.

75.     The Workday Trademarks were distinctive and had acquired secondary meaning at the time Defendants first began offering their Infringing Services.

76.     Workday is informed and believes, and on that ground alleges, that Defendants have intentionally appropriated Workday's trademarks with the intent of causing confusion, mistake, and deception as to the sources of the Infringing Services with the intent to palm off the Infringing Services as those of Workday, and as such, have committed unfair competition.

77.     Defendants' unauthorized use of the Workday Trademarks is likely to cause confusion to the public regarding the source of Defendants' services and the affiliation (or lack thereof) between Workday and Defendants.

78.     The foregoing acts of the Defendants have caused and will continue to cause injury to Workday by depriving Workday of sales of its genuine goods and services, injuring its business reputation, and by passing off Defendants' goods and services, including the Infringing Services, as Workday's goods and services, all in violation of the law of the State of Texas.

79.     Defendants' acts have caused and will continue to cause irreparable harm and damage to Workday, and have caused and will continue to cause Workday monetary damage in an amount thus far not determined, for which Workday is entitled to its actual damages, Defendants' profits, punitive damages, attorneys' fees, and costs.

80.     As a consequence of Defendants' actions, Workday is entitled to injunctive relief and an order that Defendants disgorge all profits on the use, display, or sale of the Infringing Services.

## PRAYER FOR RELIEF

WHEREFORE, Workday requests that this Court:

A.     Permanently enjoin and restrain Defendants, their officers, agents, servants, employees, directors, representatives, successors, assigns, related companies, and those in privity with Defendants or in active concert or participation with Defendants from:

(1) using the Workday Trademarks or any confusingly similar phrases, trademarks, or trade names in connection with the advertising, promotion, provision, and marketing of its services in a way that is likely to cause confusion among consumers, including as incorporated in domain names, LinkedIn affinity group titles, social media accounts, and other online platforms;

(2)  representing by words or conduct that Defendants or their services are authorized, sponsored, endorsed, or otherwise connected with Workday;

(3)  marketing and providing any goods or services that bear the Workday Trademarks, including but not limited to displaying promotional and marketing materials on outlets such as websites, social media platforms, and other sources available over the Internet;

(4)  filing with any governmental entity, in the United States or abroad, an application or request to register a business name, d/b/a or trademark that includes the word "workday" in it; and

(5)  any other conduct which causes or is likely to cause confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection, or association of the Infringing Services.

B.      Require Defendants to immediately transfer to Workday any domain names incorporating the Workday Trademarks in accordance with 15 U.S.C. § 1125(D)(1)(c).

C.      Award an accounting for, and enter judgment against Defendants for, all profits received from the sale of their services in connection with the Workday Trademarks in the United States.

D.      Award to Workday its damages suffered as a result of Defendants' misconduct in such sum as the Court shall find to be just as a result of the Defendants' acts complained of herein.

E.      Award Workday punitive damages to deter such misconduct by Defendants in the future.

F.      Award to Workday an increase in the award of damages up to three times the amount found for deliberate and willful trademark infringement and false designation of origin by Defendants pursuant to 15 U.S.C. § 1117(a).

G.      Award to Workday statutory damages of between $1,000 and $100,000 per each of the Infringing Domain Names pursuant to 15 U.S.C. § 1117(d).

H.      Require Defendants to pay the costs of this action together with Workday's attorneys' fees and disbursements incurred herein.

I.      Award to Workday pre-judgment and post-judgment interest.

J.      Require Defendants pursuant to 15 U.S.C. § 1118 to destroy all materials, both in print and in electronic format, bearing the Workday Trademarks.

K.      Award to Workday such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all matters decidable by jury.

Dated:  May 4, 2017

By: */s/Jon B. Hyland*
Jon B. Hyland
BARNES & THORNBURG LLP
2100 McKinney Avenue, Suite 1250
Dallas, Texas 75202-1241
Telephone: (214) 258-4123
jon.hyland@btlaw.com

*Counsel for Workday, Inc.*

DMS 4565409v6